## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

SOLOMON KABORE, HILAIRE BOUDA,
MAYESSA M. KOULIBAY LEMAN, SIRINA
SAVADOGO, NOELIE TAPSOBA, ELEONORE
TIENTCHEU, ROSINE FOUKENG DJOUDA,
FRANCOIS EMMANUEL NGUETTA,
HYPPOLITTE DJOUDA, ARTHUR TIAM
NGNEPIEPAYE, EDITCH TCHE, ARMEL
BEMMO, ARMEL CONSTANT BOGUISSOGO,
TIMOTHEE NTAMACK, DIEUDONNE
MANANGA, PAUL EKWALLA EKOLLO,
SABINE HORTENSE NTSAMA, ANNIE NGO
DIPOUMBI, NWAFO WANDJI CATHY
STELLA, and KUMAKOLO FRIDA PAOLA

                    *Plaintiffs*,

              v.

GLOBAL INVESTMENT TRADING S.A. d/b/a
LIYEPLIMAL, SIMTREX COMMERCIAL
BROKERS LLC, EMILE PARFAIT SIMB,
CECILE JEANNETTE FOTSO BENGA, JOSEPH
FLAUBERT NYA, MBOGMIS NEE BASSOMO
MARTHE ANGELINE, SERGE FOGUE, YETNA
YETNA MATHIEU, AIMÉ SAMUEL KOUM,
ALAIN BESSALA, ALBERT NOEL
TCHUENTE, ALOYS RODRIGUE NOUCK,
ANNY P N ELODIE ASSIH, AUGUSTIN
BOUDA, AUGUSTINE REINE SOUVENIRS
NGO NHIOMOG U MAIH, BENOÎT BEA
MOUALAL, BERNARD BAYIHA, BIENVENU
BAMOUNI, BOUBAKAR DIARRA, BRICE
HOUSSOU, CHARLES TAKAM NOULE,
CHRISTOPHE NYOBE NLEND, CLAUDINE
MANGA, CLAUDINE SYLVIE ELOUMOU
AKAMA EPSE MANGA, CLEMENTINE
NADEGE MOUALAL, DANIEL LE BON
KEMA'EUGA TCHOUZOU, DANIEL NJOME

Civil Action No. _____

**COMPLAINT FOR DAMAGES AND
PUNITIVE DAMAGES**

**JURY TRIAL DEMANDED**

MOUSSINGA, DAVID CHRISTIAN KOM, DESIRE OLOMO, JACK RAYANE DJAPA TCHAGWO, DOMINIQUE BITJOKA, EDOUARD ARSEN OUATTARA, EKWALLA NATHAN GUY HERVE NTONE, EMMANUEL FOKO, EMILE PARFAIT SIMB, GERMAINE SIMB, EVELYN MOCHE, FERDINAND NGANGUE, FILS NGAI NGAI, FREDERICK SOME M, FRU ANNA EBENYE EPSE FRU, ANNE EBENYE EPSE FRU, GILLES AUJOL, SACKO DAPA, HONORINE RATOLOJANAHARY, JACQUES LANDRY BIKAI, JEAN CALVIN ABELA, JEANNE D'ARC BIDJONI, JEFF JULLIAN DJAPA SAPEYA, JEFFE KOUMBOU F, JODEL ARMAND MANDENG NTSIMI, JOHN MANDENG,JULES HONORE NYECK, JULIENNE NDJE, JUNIOR MAIH, KOANDA OUSMANE, LAURE EPIPHANIE NDAKGO, LISE AMANDINE MOUENDI, MAHAMADOU TO, MAMBO EPSE KOUM JULIENNE, MARTIN BROCHU, MATECK EPOUSE BAYIHA JOSEPHINE NICOLE, MATHIEU YETNA YETNA, MENSAH DAKEVI, MONIQUE YOHANA NGO MAIH BAHOYA, MURIEL CHRISTILLE TEDJO, M'WETIGNE FREDERIC SOME, NATHALIE YAKAM, NATHAN GUY EKWALLA, NEMESIOUS MOUENDI MOUENDI, NGO NDEBI EPSE LIBAM, PANGSOU INNOCENT, PAUL DONGUE, PAULIN NYOBE SIMON, RENÉ AYINA, RENE HERMANN NGOUADJE, RICHARD ENGOULOU, SAMUEL AIME KOUM, SEBASTIEN PANNY, SERGE PATRICK FOTUE, SEVERIN PEFOUMBOU, SIMON OUEDRAOGO, SOULEMANOU MEFIRE, SOUMARE FATOUMATA, THOMAS TIMOTHÉE MANGA, RUDY THIBAULT IKELE MATIBA, WILLIAM HENRY MBOM MAIH, WILLY TCHUILEN NGATCHA, PAMELA JUDITH YOUMBI NGUENANG, YVETTE MEVAZARA, PIERRE ZOUNGRANA, SERAPHINE DENTO, XAVIER CLAUDE FEUDJIO, SUMCH TAREK, TANZIL AHMAD, FRANCK KABORE, ROUSSEL NGANGWA, STEPHANIE MAMSEU, ALBERT NGOG,

MARIE DELPHINE BANG, ANNE-
GEORGETTE BEKONO, PATRICK MESSI,
ERIC DENIS NGONO, ACHILLE DJOUTA,
NATHALIE YAMB, OLIVIA RAVAKA
MALALA RAKOTONARIVO, NICOLE
RASOLONJATOVO, STEVE ARNOLD
DJOUMESSI NGUEKENG, JOLANDE PETIPA,
MONIQUE TATIOSOP, ARMELLE KUEMO,
MARIE JOSEPH VOGTEMBING, SEVERIN
POFOUMBO, GILDAS NGAMBOU MBOUNA,
SANDRINE FAMI-ETETMEN, MARIE
BROUARD NEE MARIE BASSOMO, JEAN-
JACQUES MOIFFO, WILFRIED FAMI,
CHARLINE LEMA, HERVÉ SIMON EONE
EONE, JEAN LOUIS MESSANG, HENRI NOËL
MOUKOURI MISSIPO, EDWIGE BITEU,
CABRAL LIBII LI NGUE, and LANDRY
ANTOINE LEMOGO

                    *Defendants*.

Plaintiffs Solomon Kabore, Hilaire Bouda, Mayessa M. Koulibay Leman, Sirina Savadogo, Noelie Tapsoba, Eleonore Tientcheu, Rosine Foukeng Diouda, Francois Emmanuel Nguetta, Hyppolitte Djouda, Arthur Tiam Ngnepiepaye, Edith Tche, Armel Bemmo, Armel Constant Boguissogo, Timothee Ntamack, Dieudonne Mananga, Paul Ekwalla Ekollo, Sabine Hortense Ntsama, Annie Ngo Dipoumbi, Nwafo Wandji Cathy Stella, and Kumakolo Frida Paola (collectively, Plaintiffs) allege as follows as and for their Complaint against Defendants Global Investment Trading S.A. d/b/a Liyeplimal ("Liyeplimal"), Simtrex Commercial Brokers LLC ("Simtrex") (collectively, the "Liyeplimal Corporate Defendants"), Emile Parfait Simb, Cecile Jeannette Fotso Benga, Joseph Flaubert Nya, Mbogmis Nee Bassomo Marthe Angeline, Serge Fogue, Yetna Yetna Mathieu, Aimé Samuel Koum, Alain Bessala, Albert Noel Tchuente, Aloys Rodrigue Nouck, Anny P N Elodie Assih, Augustin Bouda, Augustine Reine Souvenirs Ngo Nhiomog U Maih, Benoît Bea Moualal, Bernard Bayiha, Bienvenu Bamouni, Boubakar Diarra,

Brice Houssou, Charles Takam Noule, Christophe Nyobe Nlend, Claudine Manga, Claudine Sylvie Eloumou Akama Epse Manga, Clementine Nadege Moualal, Daniel Le Bon Kema'euga Tchouzou, Daniel Njome Moussinga, David Christian Kom, Desire Olomo, Jack Rayane Djapa Tchagwo, Dominique Bitjoka, Edouard Arsen Ouattara, Ekwalla Nathan Guy Herve Ntone, Emmanuel Foko, Germaine Simb, Evelyn Moche, Ferdinand Ngangue, Fils Ngai Ngai, Frederick Some M, Fru Anna Ebenye Epse Fru, Anne Ebenye Epse Fru, Gilles Aujol, Sacko Dapa, Honorine Ratolojanahary, Jacques Landry Bikai, Jean Calvin Abela, Jeanne D'arc Bidjoni, Jeff Jullian Djapa Sapeya, Jeffe Koumbou F, Jodel Armand Mandeng Ntsimi, John Mandeng,Jules Honore Nyeck, Julienne Ndje, Junior Maih, Koanda Ousmane, Laure Epiphanie Ndakgo, Lise Amandine Mouendi, Mahamadou To, Mambo Epse Koum Julienne, Martin Brochu, Mateck Epouse Bayiha Josephine Nicole, Mathieu Yetna Yetna, Mensah Dakevi, Monique Yohana Ngo Maih Bahoya, Muriel Christille Tedjo, M'wetigne Frederic Some, Nathalie Yakam, Nathan Guy Ekwalla, Nemesious Mouendi Mouendi, Ngo Ndebi Epse Libam, Pangsou Innocent, Paul Dongue, Paulin Nyobe Simon, René Ayina, Rene Hermann Ngouadje, Richard Engoulou, Samuel Aime Koum, Sebastien Panny, Serge Patrick Fotue, Severin Pefoumbou, Simon Ouedraogo, Soulemanou Mefire, Soumare Fatoumata, Thomas Timothée Manga, Rudy Thibault Ikele Matiba, William Henry Mbom Maih, Willy Tchuilen Ngatcha, Pamela Judith Youmbi Nguenang, Yvette Mevazara, Pierre Zoungrana, Seraphine Dento, Xavier Claude Feudjio, Sumch Tarek, Tanzil Ahmad, Franck Kabore, Roussel Ngangwa, Stephanie Mamseu, Albert Ngog, Marie Delphine Bang, Anne-Georgette Bekono, Patrick Messi, Eric Denis Ngono, Achille Djouta, Nathalie Yamb, Olivia Ravaka Malala Rakotonarivo, Nicole Rasolonjatovo, Steve Arnold Djoumessi Nguekeng, Jolande Petipa, Monique Tatiosop, Armelle Kuemo, Marie Joseph Vogtembing, Severin Pofoumbo, Gildas Ngambou Mbouna, Sandrine Fami-Etetmen, Marie Brouard Nee Marie Bassomo, Jean-Jacques

Moiffo, Wilfried Fami, Charline Lema, Hervé Simon Eone Eone, Jean Louis Messang, Henri Noël Moukouri Missipo, Edwige Biteu, Cabral Libii Li Ngue, and Landry Antoine Lemogo (collectively, the "Individual Defendants") (all Defendants, collectively, "Defendants"):

## **INTRODUCTION**

> **As is the norm with most Ponzi schemes, Liyeplimal has no investible asset, product, service, or business. … Liyeplimal's base, like most businesses grounded on affiliate recruitment, is week and subject to a crash[1]**

This is how Nigerian news site Page One describes Defendant Liyeplimal: a purported cryptocurrency trading firm that operated as a Ponzi scheme and fraudulently manipulated investors throughout the world to invest millions of dollars with the promise of being part of the largest cryptocurrency community in Africa. A true and correct copy of a slide deck sent to potential investors by Defendants is attached hereto as **Exhibit "A."** Indeed, Liyeplimal has been described as one of the "biggest financial scams in Africa.[2]" Further, The Commission de Surveillance du Marché Financier de L'Afrique Centrale ("COSUMAF") issued a securities fraud warning against Liyeplimal. A true and correct copy of the press release issued by COSUMAF regarding Liyeplimal is attached hereto as **Exhibit "B."** As stated by COSUMAF, Defendants made promises of returns amounting to 100 to 500% of the principal investment. *See* **Exhibit "B."**

The Defendants scheme is a textbook example of a Ponzi scheme and utilized the financial system of the United States to perpetuate this fraud on residents of the United States and others throughout the world. As stated in the press release made by the Autorité des marchés financiers

---

[1] Page One, *Why You Should Think Hard About Investing in Liyeplimal*, September 18, 2020, https://pageone.ng/2020/09/18/why-you-should-think-hard-about-investing-in-liyeplimal/

[2] Prosygma, *Qnet, Petronpay, Liyeplimal, list of the biggest financial scams in Africa*, May 17, 2021, https://www.prosygma-cm.com/index.php/en/news/qnet-petronpay-liyeplimal-list-of-the-biggest-financial-scams-in-africa.

("AMF"), the authority responsible for financial regulation in the Canadian province of Quebec, Defendants, through their website liyeplimal.net, promised investors who purchase "plans" that they will earn "guaranteed" weekly returns from cryptocurrency trading. A true and correct copy of the AMF press release is attached hereto as **Exhibit "C."** Unfortunately, Liyeplimal is just another example of a Ponzi scheme perpetuated by prolific fraudster Defendant Emile Parfait Simb.

Plaintiffs, by and through their undersigned counsel, allege in this action for violations of Sections 10 and 20 of the Securities Exchange Act of 1934 and Sections 12 and 15 of the Securities Act of 1933. Plaintiffs further bring this action complaining that Defendants violated Plaintiffs' rights under the New Jersey Influenced and Corrupt Organizations Act ("New Jersey RICO"), and New Jersey Common Law by engaging in, *inter alia*, breach of contract, unjust enrichment, fraudulent inducement, fraudulent misrepresentation, negligent misrepresentation, conversion, and fraud and conspiracy.

## NATURE OF THE ACTION

1.      This action alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, Sections 12(a)(1) and 15(a) of the Securities Act of 1933, the New Jersey Influenced and Corrupt Organizations Act, breach of contract, unjust enrichment, deceptive business practices, fraudulent inducement, fraudulent misrepresentation, negligent misrepresentation, conversion, and fraud and conspiracy against Defendants.

2.      Despite the patina of technological sophistication and jargon, Defendants operated a century-old fraud that was simple at its core: Liyeplimal victims, known as "affiliates," invest in limos, which are converted to XAF on the promise of advertised returns. Limos are purchased either internally through Liyeplimal or from existing Liyeplimal affiliates. The limo exchange rate

is not provided on Liyeplimal's website. Once acquired, limos are used to invest in XAF points. The conversion rate from limos to XAF is $1 limo to 800 XAF. Following the investment, Liyeplimal advertises a guaranteed return after 1 year. Individuals are unable to access their funds once invested in Liyeplimal, as the accounts are frozen for a year. While the Liyeplimal website stated that only way to become an affiliate was by purchasing a pack, one was actually forced to go through another affiliate to become an affiliate.

3.      Lyeplimal was nothing more than a Ponzi/pyramid scheme.

4.      Lyeplimal would pay referral commissions via a unilevel compensation structure. A unilevel compensation structure places an affiliate at the top of a unilevel team, with every personally recruited affiliate placed directly under them. If any level 1 affiliates recruit new affiliates, they are placed on level 2 of the original affiliates unilevel team. If any level 2 affiliates recruit new affiliates, they are placed on level 3, etc., down a theoretical infinite number of levels. Liyeplimal caps payable unilevel teams at five.

5.      This system generates profit for investors from the money paid by subsequent investors – the textbook definition of a Ponzi scheme.

6.      Liyeplimal packs had no real value, it offered investors no method of tracing their money, and it could not be used to purchase anything. The only people who stood to benefit from its existence were its founders and co-conspirators.

7.      Further, due to the varied and innumerable ways in which investors can be, and are likely to be, manipulated and harmed absent any of the protections under the federal securities laws, the Securities Act of 1933 provide for strict liability against any person who offers or sells an  unregistered  security.  As  detailed  herein,  offering  for  purchase  of  Liyeplimal

packs/memberships has at all times constituted an offer and sale of unregistered securities; and, thus, the Defendants are strictly liable under Section 12(a)(1) of the Securities Act of 1933.

8.      Defendants unlawful and fraudulent conduct has caused, and is continuing to cause, significant financial harm to Plaintiffs.

9.      Further, absent judicial intervention, Plaintiffs are unlikely to ever recover their fraudulently obtained investments. Accordingly, judicial intervention is required and requested to rectify the existing and future harm facing Plaintiffs – harm that is likely to be irreparable.

10.     Victims of Defendants scheme have nothing to show for their investments other than a mounting financial burdens.

11.     For these reasons, Plaintiffs seek compensatory, exemplary and punitive damages and any other relief the Court deems appropriate.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and Section 22 of the Securities Act [15 U.S.C. § 77v] because Plaintiffs allege violations of Section 12(a)(1) and 15(a) of the Securities Act [15 U.S.C. §§ 77l(a)(1) and 77o(a)] and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 [15 U.S.C.§§ 78(j) and 78(t)]. The Court has further subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the Parties are of diverse citizenship and the amount in question exceeds $75,000.00, exclusive of interest and costs. This Court has supplemental jurisdiction under 28 U.S.C. § 1367.

13.     This Court has personal jurisdiction over each of the Defendants because each either conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this

District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

14.     Venue is proper in this District under Section 22 of the Securities Act, 15 U.S.C. § 77v, as well as under 28 U.S.C. § 1391, because: (a) the conduct at issue took place and had an effect in this District; (b) a substantial portion of the transactions and wrongs complained of herein occurred here; and (c) Defendants have received substantial compensation and other transfers of money here by doing business here and engaging in activities having an effect in this District.

## PARTIES

15.     Plaintiff Solomon Kabore is a natural person and resident of Virginia.

16.     Plaintiff Hilaire Bouda is a natural person and resident of New York.

17.     Plaintiff Mayessa M. Koulibay Leman is a natural person and resident of New York.

18.     Plaintiff Sirina Savadogo is a natural person and resident of Georgia.

19.     Plaintiff Noelie Tapsoba is a natural person and resident of New York.

20.     Plaintiff Eleonore Tientcheu is a natural person and resident of California.

21.     Plaintiff Rosine Foukeng Djouda is a natural person and resident of South Carolina.

22.     Plaintiff Francois Emmanuel Nguetta is a natural person and resident of South Carolina.

23.     Plaintiff Hyppolitte Djouda is a natural person and resident of South Carolina.

24.     Plaintff Arthur Tiam Ngnepiepaye is a natural person and resident of Texas.

25.     Plaintiff Edith Tche is a natural person and resident of Mississippi.

26.     Plaintiff Armel Bemmo is a natural person and resident of Nevada.

27.     Plaintiff Armel Constant Boguissogo is a natural person and resident of Canada.

28.    Plaintiff Timothee Ntamack is a natural person and resident of Maryland.

29.    Plaintiff Dieudonne Mananga is a natural person and resident of Texas.

30.    Plaintiff Paul Ekwalla Ekollo is a natural person and resident of Canada.

31.    Plaintiff Sabine Hortense Ntsama is a natural person and resident of Canada.

32.    Plaintiff Annie Ngo Dipoumbi is a natural person and resident of New York.

33.    Plaintiff Nwafo Wandji Cathy Stella is a natural person and resident of Cameroon.

34.    Plaintiff Kumakolo Frida Paola is a natural person and resident of New York.

35.    Defendant Global Investment Trading S.A. d/b/a Liyeplimal is a foreign corporation based in Douala, Cameroon that transacts business in the State of New Jersey.

36.    Defendant Simtrex Commercial Brokers LLC is a foreign corporation based out of Dubai, United Arab Emirates that transacts business in the State of New Jersey.

37.    Defendant Emile Parfait Simb is a natural person and resident of Cameroon.

38.    Defendant Cecile Jeannette Fotso Benga is a natural person and resident of Canada.

39.    Defendant Joseph Flaubert Nya is a natural person and resident of Canada.

40.    Defendant Mbogmis Nee Bassomo Marthe Angeline is a natural person and resident of Cameroon.

41.    Defendant Serge Fogue is a natural person

42.    Defendant Yetna Yetna Mathieu is a natural person and resident of Cameroon.

43.    Defendant Aimé Samuel Koum is a natural person and resident of France.

44.    Defendant Alain Bessala is a natural person and resident of Canada.

45.    Defendant Albert Noel Tchuente is a natural person and resident of Michigan.

46.    Defendant Aloys Rodrigue Nouck is a natural person and resident of Cameroon.

47.     Defendant Anny P N Elodie Assih is a natural person whose residence is unknown at this time.

48.     Defendant Augustin Bouda is a natural person whose residence is unknown at this time.

49.     Defendant Augustine Reine Souvenirs Ngo Nhiomog U Maih is a natural person and resident of Cameroon.

50.     Defendant Benoît Bea Moualal is a natural person and resident of Cameroon.

51.     Defendant Bernard Bayiha is a natural person and resident of Cameroon.

52.     Defendant Bienvenu Bamouni is a natural person and resident of Burkina Faso.

53.     Defendant Boubakar Diarra is a natural person and resident of Cameroon.

54.     Defendant Brice Houssou is a natural person whose residence is unknown at this time.

55.     Defendant Charles Takam Noule is a natural person and resident of Maryland.

56.     Defendant Christophe Nyobe Nlend is a natural person and resident of Cameroon.

57.     Defendant Claudine Manga is a natural person and resident of Cameroon.

58.     Defendant Claudine Sylvie Eloumou Akama Epse Manga is a natural person and resident of Cameroon.

59.     Defendant Clementine Nadege Moualal is a natural person and resident of Cameroon.

60.     Defendant Daniel Le Bon Kema'euga Tchouzou is a natural person and resident of Cameroon.

61.     Defendant Daniel Njome Moussinga is a natural person and resident of Cameroon.

62.     Defendant David Christian Kom is a natural person and resident of Cameroon.

63.     Defendant Desire Olomo is a natural person and resident of Cameroon.

64.     Defendant Jack Rayane Djapa Tchagwo is a natural person and resident of Canada.

65.     Defendant Dominique Bitjoka is a natural person and resident of Cameroon.

66.     Defendant Edouard Arsen Ouattara is a natural person and resident of New Jersey.

67.     Defendant Ekwalla Nathan Guy Herve Ntone is a natural person and resident of Cameroon.

68.     Defendant Emmanuel Foko is a natural person and resident whose residence is unknown at this time.

69.     Defendant Germaine Simb is a natural person and resident of Cameroon.

70.     Defendant Evelyn Moche is a natural person and resident of Maryland.

71.     Defendant Ferdinand Ngangue is a natural person whose residence is unknown at this time.

72.     Defendant Fils Ngai Ngai is a natural person and resident of Cameroon.

73.     Defendant Frederick Some M is a natural person and resident whose residence is unknown at this time.

74.     Defendant Fru Anna Ebenye Epse Fru is a natural person and resident of Cameroon.

75.     Defendant Anne Ebenye Epse Fru is a natural person and resident of Cameroon.

76.     Defendant Gilles Aujol is a natural person and resident of France.

77.     Defendant Sacko Dapa is a natural person and resident of France.

78.     Defendant Honorine Ratolojanahary is a natural person and resident of Cameroon.

79.     Defendant Jacques Landry Bikai is a natural person and resident of Cameroon.

80.     Defendant Jean Calvin Abela is a natural person and resident of Cameroon.

81.     Defendant Jeanne D'arc Bidjoni is a natural person and resident of Cameroon.

82.   Defendant Jeff Jullian Djapa Sapeya is a natural person and resident of Cameroon.

83.   Defendant Jeffe Koumbou F is a natural person and resident of Cameroon.

84.   Defendant Jodel Armand Mandeng Ntsimi is a natural person and resident of Cameroon.

85.   Defendant John Mandeng is a natural person and resident of Maryland.

86.   Defendant Jules Honore Nyeck is a natural person and resident of Cameroon.

87.   Defendant Julienne Ndje is a natural person and resident of Cameroon.

88.   Defendant Junior Maih is a natural person and resident of Mauritius.

89.   Defendant Koanda Ousmane is a natural person and resident of Burkina Faso.

90.   Defendant Laure Epiphanie Ndakgo is a natural person and resident of Canada.

91.   Defendant Lise Amandine Mouendi is a natural person and resident of Cameroon.

92.   Defendant Mahamadou To is a natural person and resident of Burkina Faso.

93.   Defendant Mambo Epse Koum Julienne is a natural person whose residence is unknown at this time.

94.   Defendant Martin Brochu is a natural person and resident of France

95.   Defendant Mateck Epouse Bayiha Josephine Nicole is a natural person and resident of Cameroon.

96.   Defendant Mathieu Yetna Yetna is a natural person and resident of Cameroon.

97.   Defendant Mensah Dakevi is a natural person and resident of Togo.

98.   Defendant Monique Yohana Ngo Maih Bahoya is a natural person and resident of France.

99.   Defendant Muriel Christille Tedjo is a natural person and resident of Cameroon.

100.    Defendant M'wetigne Frederic Some is a natural person and resident of Burkina Faso.

101.    Defendant Nathalie Yakam is a natural person and resident of Virginia.

102.    Defendant Nathan Guy Ekwalla is a natural person and resident of Cameroon.

103.    Defendant Nemesious Mouendi Mouendi is a natural person and resident of Cameroon.

104.    Defendant Ngo Ndebi Epse Libam is a natural person and resident of Cameroon.

105.    Defendant Pangsou Innocent is a natural person and resident of Cameroon.

106.    Defendant Paul Dongue is a natural person and resident of Cameroon.

107.    Defendant Paulin Nyobe Simon is a natural person and resident of Cameroon.

108.    Defendant René Ayina is a natural person and resident of Cameroon.

109.    Defendant Rene Hermann Ngouadje is a natural person and resident of Canada.

110.    Defendant Richard Engoulou is a natural person and resident of Canada.

111.    Defendant Samuel Aime Koum is a natural person and resident of Cameroon.

112.    Defendant Sebastien Panny is a natural person whose residence is unknown at this time.

113.    Defendant Serge Patrick Fotue is a natural person and resident of Cameroon.

114.    Defendant Severin Pefoumbou is a natural person and resident of Virginia.

115.    Defendant Simon Ouedraogo is a natural person and resident of Burkina Fasso.

116.    Defendant Soulemanou Mefire is a natural person and resident of Cameroon.

117.    Defendant Soumare Fatoumata is a natural person and resident of France.

118.    Defendant Thomas Timothée Manga is a natural person and resident of Cameroon.

119.    Defendant Rudy Thibault Ikele Matiba is a natural person and resident of Cameroon.

120.    Defendant William Henry Mbom Maih is a natural person and resident of Guinea-Bissau.

121.    Defendant Willy Tchuilen Ngatcha is a natural person and resident of Canada.

122.    Defendant Pamela Judith Youmbi Nguenang is a natural person and resident of Cameroon.

123.    Defendant Yvette Mevazara is a natural person and resident of Burkina Faso.

124.    Defendant Pierre Zoungrana is a natural person and resident of Burkina Faso.

125.    Defendant Seraphine Dento is a natural person whose residence is unknown at this time.

126.    Defendant Xavier Claude Feudjio is a natural person and resident of Germany.

127.    Defendant Sumch Tarek is a natural person whose residence is unknown at this time.

128.    Defendant Tanzil Ahmad is a natural person whose residence is unknown at this time.

129.    Defendant Franck Kabore is a natural person and resident of New York.

130.    Defendant Roussel Ngangwa is a natural person and resident of Canada.

131.    Defendant Stephanie Mamseu is a natural person and resident of Canada.

132.    Defendant Albert Ngog is a natural person and resident of Texas.

133.    Defendant Marie Delphine Bang is a natural person and resident of Washington.

134.    Defendant Anne-Georgette Bekono is a natural person and resident of Canada.

135.    Defendant Patrick Messi is a natural person and resident whose residence is unknown at this time.

136.    Defendant Eric Denis Ngono is a natural person and resident of Canada.

137.    Defendant Achille Djouta is a natural person and resident of Canada.

138.    Defendant Nathalie Yamb is a natural person and resident of Switzerland.

139.    Defendant Olivia Ravaka Malala Rakotonarivo is a natural person and resident of Madagascar.

140.    Defendant Nicole Rasolonjatovo is a natural person and resident of Madagascar.

141.    Defendant Steve Arnold Djoumessi Nguekeng is a natural person and resident of Canada.

142.    Defendant Jolande Petipa is a natural person and resident of Canada.

143.    Defendant Monique Tatiosop is a natural person and resident of Canada.

144.    Defendant Armelle Kuemo is a natural person and resident of Canada.

145.    Defendant Marie Joseph Vogtembing is a natural person and resident of Virginia.

146.    Defendant Severin Pofoumbo is a natural person and resident of Virginia.

147.    Defendant Gildas Ngambou Mbouna is a natural person and resident of Texas.

148.    Defendant Sandrine Fami-Etetmen is a natural person and resident of New York.

149.    Defendant Marie Brouard Nee Marie Bassomo is a natural person and resident of

150.    Defendant Jean-Jacques Moiffo is a natural person and resident of France.

151.    Defendant Wilfried Fami is a natural person and resident of Canada.

152.    Defendant Charline Lema is a natural person and resident of France.

153.    Defendant Hervé Simon Eone Eone is a natural person and resident of France.

154.    Defendant Jean Louis Messang is a natural person and resident of Switzerland.

155.    Defendant Henri Noël Moukouri Missipo is a natural person and resident of Cameroon.

156.    Defendant Edwige Biteu is a natural person and resident of New York.

157.    Defendant Cabral Libii Li Ngue is a natural person whose residence is unknown at this time.

158.    Defendant Landry Antoine Lemogo is a natural person and resident of Cameroon.

**FACTUAL ALLEGATIONS**

**Background on Liyeplimal**

159.    Liyeplimal was founded in or around June of 2017 and promoted itself as a legitimate cryptocurrency trading company and that would provide investment opportunities through the purchase of "investment packs" that would be "expressed in Liyeplimal money (dollars limos).

160.    Further, to invest in Liyeplimal, individuals were required to become a registered member of the company. Membership was only possible through the sponsorship of another member.

161.    Knowing that the scheme they were setting up was a fraud and would raise suspicions of potential investors, Liyeplimal's prospectus contained a section that explicitly stated that the company was not a Ponzi scheme:

# 1.6 -Is the company a Ponzi?

162.    Liyeplimal promoted various different "investment packs" priced at, for example, $100.00 and $100,000.00. Each pack was named after a city in Africa, as shown below:

163.    Purchase of an investment pack provides access to "limos," which are then converted to XAF on the promise of advertised returns. The stated conversion rate from limos to XAF is $1 limo to 800 XAF.

164.    On its website, Liyeplimal stated that investors who purchased investor packs would earn "guaranteed" weekly returns from cryptocurrency trading.

165.    Defendants, in their prospectus, guaranteed returns based on the amount invested in Liyeplimal, with returns ranging from 110% to 154%, as shown below:

| Investment Pack | | Earnings per week (Capital + interest) | | Profitability per year | Interest rate (including the Capital) |
|---|---|---|---|---|---|
| $limos | XAF | $ limos | XAF | XAF | % |
| 100 | 80 000 | 3,07 | 1 688,5 | 88 000 | 110 |
| 200 | 160 000 | 6,53 | 3 591,5 | 187 000 | 116 |
| 400 | 320 000 | 13,84 | 7 612 | 396 000 | 123 |
| 800 | 640 000 | 29,23 | 16 076,5 | 836 000 | 130 |
| 1 600 | 1 280 000 | 61,53 | 33 841,5 | 1 736000 | 137,5 |
| 3 200 | 2 560 000 | 126,15 | 69 382,5 | 3 608000 | 140 |
| 6 400 | 5 120 000 | 258,46 | 142 208 | 7 392000 | 140 |
| 12 800 | 10240000 | 529,23 | 291 076,5 | 15 136 000 | 144 |
| 25 600 | 20480000 | 1 083,07 | 595 688,5 | 30 976 000 | 151 |
| 51 200 | 40960000 | 2 205,50 | 1 213025 | 63 078 400 | 154 |
| 100 000 | 80 000 000 | 4326 | 2379300 | 124,002,606 | 155 |

166.    Notably, once an investor purchased an investment pack, they were unable to withdraw any funds until fifty-two (52) weeks after the purchase of the investment pack, even if the investor was seeing returns in his or her account.

167.    While Liyeplimal and its agents present themselves as one of the largest and most experienced platforms for buying and selling cryptocurrencies in Africa, in reality Liyeplimal was nothing but a Ponzi scheme set up to enrich Simb Emile Parfait and those with whom he works.

168.     Limos and XAF have absolutely no value outside of Liyeplimal and they are created on demand at little or no cost to the company.

169.     Defendants claimed that an investor could make money simply by purchasing an investment pack and seeing an alleged guaranteed return, but the actual way that investors were able to earn money was by participating in Liyeplimal's multi-level marketing ("MLM") program.

170.     Indeed, without taking part in the MLM program, investors only had access to Simtrex, an unused cryptocurrency exchange, and LiMarket, an XAF e-commerce platform, to see a return on their investment. Neither of these opportunities had anything to do with Liyeplimal, other than being set up by prolific fraudster Emile Parfait Simb.

171.     It is clear that the MLM program within Liyeplimal, which is the only way an individual could actually see a return on his or her investment, is a textbook example of a pyramid scheme, as nothing is marketed or sold to retail customers and 100% of commissions paid out are tied to recruitment of new Liyeplimal affiliate investors.

172.     Pursuant to advertising published by Liyeplimal, when an investor recruits a new investor that purchases an investment pack, the investor receives a 6% residual commission. If that new investor recruits another investor, the initial investor would receive a 2% residual commission.

173.     The initial investor would receive residual commissions based on their "hierarchical level" up and through the fifth generation of new investors. The following commission table was included in the Liyeplimal prospectus:

| Level | Commissions | | | | |
|---|---|---|---|---|---|
| | Generation | | | | |
| | 1 | 2 | 3 | 4 | 5 |
| 1 | 6% | | | | |
| 2 | 6% | 2% | | | |
| 3 | 6% | 2% | 1% | | |
| 4 | 6% | 2% | 1% | 1% | |
| 5 | 6% | 2% | 1% | 1% | 2% |

174.   As with all MLM Ponzi schemes, Liyeplimal was unable to pay withdrawal requests once it ran out of new investments, causing the entire pyramid to collapse.

175.   This collapse occurred in or around December 2021.

176.   Following the collapse of Liyeplimal, Parfait set up another Ponzi scheme known as LimoCoin SWAP, which collapsed in or around February 2022.

177.   It should also be noted that, as shown above, Liyeplimal offered an apparent passive investment opportunity, which clearly constitutes a securities offering.

**Plaintiffs' Investment in Liyeplimal**

178.   Beginning in or around 2018, the Plaintiffs became aware of a supposed investment opportunity through advertising, text messages, emails social media posts, and word of mouth from Liyeplimal leaders, coaches, and executives, many of whom were and are located within the United States.

179.   The advertisements appeared to show individuals who had received large returns on their investments, which, upon information and belief, were only gained through the MLM program, *to wit*:





180.    Coaches located in the United States, and elsewhere, would also hold virtual seminars, in attempts to gain new investors, so that the pyramid scheme could continue.









181.   Each of the Plaintiffs was recruited to Liyeplimal by a "coach," who earned a commission for each new investor that they recruited, expanding the size of the pyramid.

182.   Among the ways Liyeplimal promoted its investments were through the use of YouTube, Facebook, and Twitter to raise awareness and interest in investing in Liyeplimal.

183.   Each of the "coaches," as representatives of Liyeplimal, utilized the financial system of the United States to perpetuate this fraud on residents of the United States and received financial gains by tricking the Plaintiffs into investing in a textbook Ponzi scheme.

**The Liveplimal Investment Packs Were Ponzi Schemes and Securities**

184.   Contrary to the allegations of fantastic investment returns based on guaranteed weekly gains advertised by Liyeplimal that would come from alleged "market demand" for limos, the Defendants were actually operating a Ponzi Scheme.

185.    Any investment returns provided to Liyeplimal investors were not legitimately generated; rather, Liyeplimal simply used new Liyeplimal investors' money to pay the promised returns on outstanding Liyeplimal investors' investments.

186.    In addition, Liyeplimal used new Liyeplimal investors' funds to pay Liyeplimal leaders, coaches, and executives – including, but not limited to, Defendant Simb – salary and commissions for their role in bringing additional victims into the scheme.

187.    In reality, Liyplimal was not offering a new and upcoming cryptocurrency, but instead was seling a new take on a century-old fraud. Specifically, Liyeplimal used cryptocurrency to coat its Ponzi/pyramid scheme with the thinnest veneer of legitimacy.

188.    Despite such efforts, it is abundantly clear that the Defendants were conducting and/or supporting a Ponzi/pyramid scheme.

189.    Indeed, the Liyeplimal investment program exhibited numerous characteristics of such schemes, including:

    a.  Providing exorbitant returns on an investment that had no income other than new investor money;

    b.  Artificially increasing the value of its cryptocurrency by having new investors in the Ponzi scheme purchase investment packs/memberships to invest;

    c.  Self-ascribing value to the Ponzi scheme investments rather than having those investment values dictated by actual market demand; and

    d.  Expanding the amount of people in the Ponzi scheme by implementing a pyramid scheme that paid a commission several levels deep for recruits.

190.    Further, this Action alleges claims under Sections 12(a) and 15(a) of the Securities Act [15 U.S.C. §§ 77l(a) and 77o(a)], and are based solely on allegations of strict liability.

191.    Liyeplimal Investment Packs and Limos were not registered with the Securities and Exchange Commission ("SEC") and, thus, the Defendants engaged in the offer and sale of unregistered securities.

192.    Under the Securities Act, a "security" is defined as including any "note," "investment contract," or "instrument commonly known as a 'security.'" *See* 15 U.S.C. §§ 77b(a)(1).

193.    Here, the Limos and Liyeplimal Investment Packs each constitute an investment contract.

194.    Indeed, in *S.E.C. v. W.J. Howey Co.*, the United States Supreme Court established a three-part test to determine whether an offering, contract, transaction, or scheme constitutes an investment contract. Under the test articulated in *Howey*, a contract, transaction, or scheme is an "investment contract" if it involves: (i) the investment of money; (ii) in a common enterprise; (iii) with the expectation of profits to come solely from the efforts of others.

195.    When determining whether a security has been offered and sold, the focus must be on the economic realities underlying the transaction.

196.    Here, the economic realities are that Plaintiffs invested funds in trader packages/memberships to obtain Limos – which they expected would lead to guaranteed lucrative returns. Investors in the Liyeplimal Investment Packs used cryptocurrency or fiat currency to purchase the Investment Packs required to obtain their Limos. Accordingly, Plaintiffs' investments constitute an investment of money for the purpose of determining whether an investment involved a security.

197.    Plaintiffs were investing in a common enterprise with the Defendants, as the investment monies were pooled under the control of Defendant Liyeplimal, and the success of the

investments – and thus the profits stemming from the future valuation of Limos – were entirely reliant on the Defendants' actions, primarily Liyeplimal's alleged implementation of manual trading, AI trading, and buying/storing bitcoins and other cryptocurrencies, which Liyeplimal claimed would produce returns sufficient to cover the guaranteed returns.

198.    In short, it is indisputable that the Defendants were selling investment contracts and that any success from Liyeplimal's cryptocurrency trading – enabling payment of the returns that were to be distributed – as well as any future potential increases to the value of Limos were entirely dependent on the Defendants' actions.

199.    Further, liability for selling unregistered securities extends to "the person who successfully solicits the purchase [of an unregistered security], motivated at least in part by a desire to serve his own financial interests or those of the securities owner." *Pinter v. Dahl*, 486 U.S. 622, 643 (1988).

200.    Thus, the Defendants were clearly "sellers" under the Federal Securities Laws.

201.    As noted above, Plaintiffs were actively solicited by the Defendants to purchase Investment Packs through messages, advertisements, social media posts, and promotional videos. Accordingly, each of the solicitations outlined were successful in soliciting Plaintiffs to invest with Liyeplimal.

202.    Each of the Defendants re considered "sellers," as each successfully solicited investments in Liyeplimal Investment Packs for their own or Liyeplimal's financial benefit.

203.    It is indisputable that the Defendants participated in the offer and sale of Investment Packs, which were required to obtain Limos.

**Defendants Led Plaintiffs to Incur Substantial Losses**

204.    By 2021, it was apparent that Liyeplimal's program was a Ponzi scheme.

205. Indeed, regulatory and law enforcements authorities in Canada, Cameroon, Angola, Gabon, the Central African Republic, Chad, the Republic of Congo, and Equatorial Guinea, among others had issued warnings to its residents that Liyeplimal was a fraudulent investment scam to be avoided.

206. The Plaintiffs were continually misled by the Defendants, as the Defendants misrepresented the value of their cryptocurrency, the trading being done by alleged investors and AI systems working for Liyeplimal, and the guaranteed returns that were being advertised. That pattern of deception was continuous.

207. On repeated occasions, the Defendants caused to be transmitted from the United States, including in the State of New Jersey, reports and statements that contained erroneous and fraudulent material regarding investment strategy, the risks involved in such investments, the nature of the investment strategy, and the actual investment activity of Liyeplimal.

208. Contrary to the Defendants' representations, they were engaged in a giant Ponzi scheme and committed fraud upon the Plaintiffs and the general public.

209. On May 26, 2022, Defendant Emile Parfait Simb, the founder of Liyeplimal, was arrested at Douala Airport in Cameroon due to his fraudulent conduct surrounding the Liyeplimal Ponzi scheme.

210. Upon information and belief, Defendant Emile Parfait Simb was attempting to flee to Morocco to escape prosecution in Cameroon.

211. As a result of Defendants' fraudulent and misleading activities – as well as their violation of multiple securities laws – Plaintiffs have suffered damages believed to be greater than One Million Six Hundred and Sixty-Two Thousand Dollars ($1,662,000.00).

## **CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**Violation of Section 10(b) of the Securities**
**Exchange Act of 1934 and SEC Rule 10(b)(5)**
**(Against All Defendants)**

212.　Plaintiffs reallege all of the above allegations as if fully set forth herein.

213.　As more fully set forth in the factual allegations above, Defendants, through the use of mail and the means and instrumentalities of interstate commerce, fraudulently induced Plaintiffs to purchase investments, being marketed by the Defendants herein through the use of materially false and misleading messages, statements, and other documents.

214.　Defendants knowingly transmitted to Plaintiffs and directly disseminated materially false and misleading statements, as more fully described above, describing and recommending the purchase of securities and investments in Liyeplimal Cyrptocurrency Packs purchased by the Plaintiffs.

215.　At the time of the misstatements and omissions and concealments as described above, Defendants knew or reasonably should have known that such statements were materially false and misleading, and omitted facts required in order to make the statements made, in light of the circumstances under which they were made, not misleading, but knowingly or recklessly made such statements to Plaintiffs in order to induce them to purchase the investments.

216.　Plaintiffs reasonably relied upon the information provided to them and statements made by the Individual Defendants, as principal and agents of the Liyeplimal Corporate Defendants. At the time of such investments, Plaintiffs had no knowledge that the information and recommendations provided by the Defendants contained material misstatements of material facts and omission or concealments of material facts.

217.　Plaintiffs would not have purchased the Liyeplimal Cryptocurrency Packs but for the materially false and misleading information provided to her by the Individual Defendants.

218.    The acts and conducts of the Individual Defendants set forth herein were such an extreme departure from the standards of ordinary care that the Individual Defendants either knowingly, were indifferent to, or were actually aware that the Individual Defendants were engaged in financial fraud by memes of a Ponzi scheme or similar perpetrated in connection with the purchase and sale of securities.

219.    By reason of the foregoing, the Defendants were primary violators of Section 10(b) of the Securities Exchange Act and Rule 10(b)(5) promulgated thereunder in that they used the mails and instrumentalities of intrastate and interstate commerce to affirmatively misrepresent material facts. Further, they recklessly failed to disclose material facts, and they had a duty to the Plaintiffs to discover the best way to disclose to the Plaintiffs and others in connection with the purchase and sale of securities.

220.    As a direct and proximate result of Defendants fraudulent conduct, Plaintiffs have suffered damage in connection with their purported investment in the Liyeplimal Cryptocurrency Packs for compensatory damages in an amount not less than $1,662,908.98.

**SECOND CAUSE OF ACTION**
**Violation of Section 20(a) of the Securities Exchange Act of 1934**
**(Against Defendant Emile Parfait Simb)**

221.    Plaintiffs reallege all of the above allegations as if fully set forth herein.

222.    Emile Parfait Simb is a control person within the meaning of Section 20(a) of the Securities Exchange Act of 1934.

223.    Defendant Simb recklessly ignored and/or concealed and/or failed to disclose and/or consciously disregarded the obvious material aforementioned instances of fraudulent activity. They knew and/or should have known and/or acted with reckless disregard to falsity of the aforementioned misrepresentations.

224.    Simb was responsible for making directly or indirectly affirmative representations concerning the honesty and integrity of the Defendants' business, the profitability of the Defendants' business, the financial condition of the Defendants, and the accuracy of the statements provided to Plaintiffs.

225.    The acts and conducts of the individuals set forth herein were such an extreme departure from the standards of ordinary care that Defendant Simb either knowingly was indifferent or was actually aware that the Defendants were engaged in the financial fraud by means of a Ponzi scheme or similar scheme perpetrated in connection with the purchase and sale of securities.

226.    By virtue of his position with the Liyeplimal Corporate Defendants, Simb had the power and authority to cause the Liyeplimal Corporate Defendants to engage in the wrongful conduct set forth herein. By reason of such conduct, Simb is liable pursuant to Section 20(a) of the Securities Exchange Act of 1934.

227.    As such, Simb are thus liable to Plaintiffs in an amount to be determined at trial, but not less than $1,662,908.98.

**THIRD CAUSE OF ACTION**
**Violation of Section 12(a) of the Securities Act**
**(Against All Defendants)**

228.    Plaintiff realleges all of the above allegations as if fully set forth herein.

229.    Section 12(a) of the Securities Act (15 U.S.C. § 77l[a]) grants Plaintiffs a private right of action against any person who offers or sells securities in violation of Section 5 (15 U.S.C. § 77[e]), and states that such person:

> shall be liable … to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any

income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

230.    Defendants, by engaging in the conduct described herein, (a) sold securities in violation of Section 5 of the Securities Act, and (b) directly or indirectly made use of means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or to actually sell securities, or to carry or cause such securities to be carried through the mails or in interstate commerce for the purpose of sale or for delivery after sale.

231.    The Liyeplimal Cryptocurrency Packs/Affiliate Memberships exhibit the following particular hallmarks of a security under the *Howey* test: (a) to receive any Liyeplimal Cryptocurrency Packs (and invest in Liyeplimal Affiliate Memberships), an investment of money, in the form of fiat currency and/or cryptocurrency was required; (b) the investment of money was made into the common enterprise that is the Liyeplimal Corporate Defendants and its ability to provide returns using its pools of investors or otherwise; and (c) the success of the investment opportunities and any potential returns therein were entirely reliant on the Defendants ability to continuously provide such returns to investors.

232.    Defendants are "sellers" within the meaning of the Securities Act because they or their agents solicited Plaintiff's investments in Liyeplimal Cryptocurrency Packs/Affiliate Memberships.

233.    As a direct and proximate result of Defendants unregistered sale of securities, Plaintiff has suffered damage in connection with their purported purchase of Liyeplimal Cryptocurrency Packs and Defendants are liable to Plaintiffs for compensatory damages in an amount not less than $1,662,908.98.

### FOURTH CAUSE OF ACTION
**Violation of Section 15(a) of the Securities Act**
**(Against Defendant Emile Parfait Simb)**

29

234.    Plaintiffs reallege all of the above allegations as if fully set forth herein.

235.    Due to his ownership in and/or control over the Liyeplimal Corporate Defendants, Defendant Simb acted as a controlling person within the meaning of Section 15(a) of the Securities Act as alleged herein.

236.    By virtue of his top-level executive and controlling person positions as a behind the scenes owner/developer and/or based on his awareness of the Liyeplimal Corporate Defendants' operations, Defendant Simb had the power to influence and control and did influence and control, directly or indirectly, the decision making relating to the Liyeplimal Cryptocurrency Packs/Affiliate Memberships, including the decision to engaged in the sale of unregistered securities in furtherance thereof.

237.    Defendant Simb is a culpable participant in the fraudulent scheme described herein and caused the Liyeplimal Corporate Defendants to engage in the acts and omissions described herein.

238.    Accordingly, Defendant Simb is liable to Plaintiffs as a control person of the Liyeplimal Corporate Defendants under Section 15(a) of the Securities Act.

239.    As a direct and proximate result of Defendant Simb's conduct, Plaintiffs have suffered damage in an amount not less than $1,662,908.98.

**FIFTH CAUSE OF ACTION**
**Violation of N.J.S.A. 2c:41-1, *et seq.*, New Jersey RICO**
**(Against the Individual Defendants)**

240.    Plaintiffs reallege all of the above allegations as if fully set forth herein.

241.    Each of the Individual Defendants is a "person" as that term is defined in N.J.S.A. 2C:41-1(b).

242.     The Individual Defendants, collectively, constitute an "enterprise" as that term is defined in N.J.S.A. 2C:41-1(c) (the "Enterprise").

243.     From 2017 to present, the Individual Defendants associated together for a common purpose and were an ongoing organization.

244.     The Enterprise had an existence separate and apart from the pattern of racketeering, and functioned as a continuing unit with a hierarchical decision-making structure, with Simb as the leader.

245.     Defendant Simb directed the other Individual Defendants and other non-parties to take actions in furtherance of the fraudulent purpose of the Enterprise.

246.     The Enterprise engaged in activities that effect trade, namely the theft by deception from purported investors who intended to invest in Liyeplimal Cryptocurrency Packs/Affiliate Memberships.

247.     Defendant Simb surpervised and controlled the Enterprise and directed the affairs of the Enterprise by, among other things, transmitting and causing to be transmitted communications by wire and mail related to the above-noted frauds – examples of which are identified above.

248.     By knowingly and willfully transmitting and causing to be transmitted the above-noted communications by wire and/or mail in furtherance of the frauds, the Individual Defendants have participated in a pattern of racketeering activity in violation of N.J.S.A. 2C:41-1(c).

249.     As a direct result of the pattern of racketeering activity in which the Individual Defendants participated, Plaintiffs have suffered damages in an amount to be determined at trial, but not less than $1,662,908.98.

**SIXTH CAUSE OF ACTION**
**Breach of Contract**

31

**(Against All Defendants)**

250.    Plaintiffs reallege all of the above allegations as if fully set forth herein.

251.    The terms of the Liyeplimal Cryptocurrency Pack/Affiliate Memberships constitute a contract between Plaintiffs and Defendants.

252.    The terms of the Liyeplimal Cryptocurrency Pack/Affiliate Memberships called for an investment of fiat currency by Plaintiffs.

253.    The funds paid by Plaintiffs pursuant to the Liyeplimal Cryptocurrency Pack/Affiliate Memberships were pooled by Defendants in an effot by Defendants to secure a profit for themselves. As a result, the investors shared in the risks and benefits of the investment.

254.    Plaintiffs relied on, and are dependent upon, the expertise and efforts of the Liyeplimal Corporate Defendants for their investment returns.

255.    The terms of the Liyeplimal Cryptocurrency Pack/Affiliate Memberships constitute an investment contract and are therefore subject to federal and state securities laws, including the registration requirements promulgated thereunder.

256.    Defendants breached its contracts with Plaintiffs by failing to provide any actual investment efforts. Rather than adhere to the express unequivocal terms of the contract, Defendants converted Plaintiffs' investments into worthless Liyeplimal Cryptocurrency Pack/Affiliate Memberships.

257.    Moreover, no registration statement was filed or in effect with any federal or state regulatory body, and no exemption registration exists with respect to the Liyeplimal Cryptocurrency Pack/Affiliate Memberships.

258.    As a direct result of Defendants' breach of contract, Plaintiffs have suffered damages in an amount to be determined at trial, but not less than $1,662,908.98.

## SEVENTH CAUSE OF ACTION
### Unjust Enrichment
### (Against All Defendants)

259.   Plaintiffs reallege all of the above allegations as if fully set forth herein.

260.   Defendants have reaped the benefits of operating and/or personally benefiting from inducing Plaintiffs to invest in a fraudulent Ponzi/pyramid scheme (Liyeplimal Cryptocurrency Pack/Affiliate Memberships), thereby causing harm to Plaintiffs.

261.   It would be unconscionable and against the fundamental principles of justice, equity, and good conscience for the Defendants to retain the substantial monetary benefits they have received as a result of their misconduct.

262.   As a result Defendants' unjust enrichment, Plaintiffs have suffered damages in an amount to be determined at trial, but not less than $1,662,908.98.

## EIGHTH CAUSE OF ACTION
### Fraudulent Inducement
### (Against All Defendants)

263.   Plaintiffs reallege all of the above allegations as if fully set forth herein.

264.   Defendants, by acts of both omission and commission, made to Plaintiffs false statements of material facts about the services Plaintiff would receive from Liyeplimal upon investing in Liyeplimal Cryptocurrency Pack/Affiliate Memberships.

265.   Specifically, Defendants' representations to Plaintiffs included, among other things:

   a.   That Plaintiffs would receive a guaranteed return on all investments made into Liyeplimal;

   b.   That Liyeplimal would be the largest cryptocurrency community in Africa;

   c.   That Defendants would monitor and analyze the market for Plaintiffs;

   d.   That Plaintiffs would receive instant commissions for Affiliates recruited;

33

     e.    That Defendants were building a "NASDAQ" on a Blockchain with a range of large marketable assets, none of which actually existed; and

     f.    That Investment returns were legitimately generated and were not simply a reallocation of new Liyeplimal investors' money used to pay the promised returns on outstanding Liyeplimal investors' investments in classic Ponzi scheme fashion.

266.    Defendants knew these statements were false when they were made.

267.    Defendants intended for Plaintiffs to be induced into action by relying upon the statements of fact made to them by and on behalf of Defendants.

268.    Plaintiffs justifiably relied on the false statements when Plaintiff invested into Liyeplimal Cryptocurrency Pack/Affiliate Memberships.

269.    As a result of Defendants' fraudulent inducement, Plaintiffs have suffered damages in an amount to be determined at trial, but not less than $1,662,908.98.

## NINTH CAUSE OF ACTION
### Fraudulent Misrepresentation
### (Against All Defendants)

270.    Plaintiffs reallege all of the above allegations as if fully set forth herein.

271.    Defendants made false representations of material fact regarding the status of Liyeplimal and made misrepresentations concerning the investments into Liyeplimal Cryptocurrency Pack/Affiliate Memberships and the purported safety of Plaintiffs' investments so that they could dupe Plaintiffs into investing over $1,500,000.00 into Liyeplimal, which was transferred to Defendants.

272.    Specifically, these statements included:

     a.    That Plaintiffs would receive a guaranteed return on all investments made into Liyeplimal;

     b.    That Liyeplimal would be the largest cryptocurrency community in Africa;

     c.    That Defendants would monitor and analyze the market for Plaintiffs;

    d.   That Plaintiffs would receive instant commissions for Affiliates recruited;

    e.   That Defendants were building a "NASDAQ" on a Blockchain with a range of large marketable assets, none of which actually existed; and

    f.   That Investment returns were legitimately generated and were not simply a reallocation of new Liyeplimal investors' money used to pay the promised returns on outstanding Liyeplimal investors' investments in classic Ponzi scheme fashion.

273.    Defendants knew these statements were false when they were made.

274.    Defendants intended for Plaintiffs to rely on these false statements.

275.    Plaintiff justifiably relied on the false statements when they invested $1,507,733.26 into Liyeplimal.

276.    As a result of Defendants' fraudulent conduct, Plaintiffs have suffered damages in an amount to be determined at trial, but not less than $1,662,908.98.

### TENTH CAUSE OF ACTION
### Fraudulent Misrepresentation
### (Against All Defendants)

277.    Plaintiffs reallege all of the above allegations as if fully set forth herein.

278.    The Defendants, by acts of both omission and commission, made to Plaintiffs false statements of material facts about the services Plaintiffs would receive from the Liyeplimal Corporate Defendants upon opening a Liyeplimal membership and investing in Liyeplimal Cryptocurrency Pack/Affiliate Memberships in exchange for their investments.

279.    Specifically, these statements included:

    a.   That Plaintiffs would receive a guaranteed return on all investments made into Liyeplimal;

    b.   That Liyeplimal would be the largest cryptocurrency community in Africa;

    c.   That Defendants would monitor and analyze the market for Plaintiffs;

    d.   That Plaintiffs would receive instant commissions for Affiliates recruited;

     e.    That Defendants were building a "NASDAQ" on a Blockchain with a range of large marketable assets, none of which actually existed; and

     f.    That Investment returns were legitimately generated and were not simply a reallocation of new Liyeplimal investors' money used to pay the promised returns on outstanding Liyeplimal investors' investments in classic Ponzi scheme fashion.

280.    Defendants knew these statements were false when they were made.

281.    Defendants intended for Plaintiffs to rely on these false statements.

282.    Plaintiff justifiably relied on the false statements when they invested $1,507,733.26 into Liyeplimal.

283.    As a result of Defendants' negligent misrepresentations, Plaintiffs have suffered damages in an amount to be determined at trial, but not less than $1,662,908.98.

## ELEVENTH CAUSE OF ACTION
### Conversion
### (Against All Defendants)

284.    Plaintiffs reallege all of the above allegations as if fully set forth herein.

285.    Plaintiffs transferred funds and assets to Liyeplimal for investment to obtain Liyeplimal Cryptocurrency Pack/Affiliate Memberships.

286.    Liyeplimal has kept Plaintiffs' funds and assets after Plaintiffs requested their return, despite Liyeplimal's lack of any ownership interest in the assets.

287.    By refusing to return to Plaintiffs their assets, defendants intended to interfere with, and indeed have interfered with, Plaintiffs' ownership pand interest in those holdings and have deprived Plaintiffs of their property, permanently or temporarily.

288.    Upon information and belief, Defendants have utilized Plaintiffs' funds and assets to cover their own business expenses and to enrich their directors, shareholders, and Affiliates, including the Individual Defendants.

289.     As a result Defendants' conversion, Plaintiffs have suffered damages in an amount to be determined at trial, but not less than $1,662,908.98.

### TWELFTH CAUSE OF ACTION
**Fraud and Conspiracy**
**(Against All Defendants)**

290.     Plaintiffs reallege all of the above allegations as if fully set forth herein.

291.     The foregoing fraudulent scheme was intended to and did accomplish its end. Plaintiffs relied on the representations made by the Defendants and good faith and without knowledge of their falsity.

292.     The Defendants directly and indirectly, individually or in concert, engaged in acts, practices, and courses of dealing that constitute common law fraud.

293.     The false statements made by Defendants were material as they were key to the inducement of investors. The Defendants knew of the falsity of the representations and ignored the truth or should have known that they were falsehoods or knew or should have known that the lack of substance behind the investment schemes when they made the false representations to the Plaintiffs.

294.     Defendants intended that the Plaintiffs would act on these falsehoods and actually invest their monies with Defendants in reliance thereon. The Defendants knew or should have known that the Plaintiffs were ignorant of the truth as to the nature of these investments because the Defendants engaged in a pattern of deception.

295.     The false representations were knowingly made by the use of verbal representations by the Individual Defendants, as well as through the internet and slide decks in such a way that the Plaintiffs had good reason to rely on the misleading representations.

296.     The Plaintiffs were ultimately damaged from the losses incurred of over $1,507,733.26.

297.     The scheme promulgated by the Defendants, as described above, was a textbook example of a Ponzi scheme and had no true investment value and lost all of Plaintiffs' funds.

298.     As a result Defendants' fraud and conspiracy, Plaintiffs have suffered damages in an amount to be determined at trial, but not less than $1,662,908.98.

## Punitive Damages

299.     The conduct of Defendants described above is outrageous. Defendants' conduct that harmed the Plaintiffs was malicious, oppressive, and in reckless disregard of the Plaintiffs' rights. The acts and omissions described above were willful and performed with actual or implied malice. Punitive and exemplary damages are therefore appropriate and should be imposed in this instance.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request the Court to enter Judgement against Defendants as follows:

(a) As to the first cause of action, compensatory damages in a sum of money that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction, and in an amount not less than $1,662,908.98, together with punitive damages in an amount sufficient to punish and deter the Defendants, in an amount not less than $16,629,089.90.

(b) As to the second cause of action, compensatory damages in a sum of money that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction, and in an amount not less than $1,662,908.98, together with punitive damages in an amount sufficient to punish and deter the Defendants, in an amount not less than $16,629,089.90.

(c) As to the third cause of action, compensatory damages in a sum of money that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction, and in an amount not less than $1,662,908.98, together with punitive damages in an amount sufficient to punish and deter the Defendants, in an amount not less than $16,629,089.90.

(d) As to the fourth cause of action, compensatory damages in a sum of money that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction, and in an amount not less than $1,662,908.98, together with punitive damages in an amount sufficient to punish and deter the Defendants, in an amount not less than $16,629,089.90.

(e) As to the fifth cause of action, compensatory damages in a sum of money that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction, and in an amount not less than $1,662,908.98, together with punitive damages in an amount sufficient to punish and deter the Defendants, in an amount not less than $16,629,089.90.

(f) As to the sixth cause of action, compensatory damages in a sum of money that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction, and in an amount not less than $1,662,908.98, together with punitive damages in an amount sufficient to punish and deter the Defendants, in an amount not less than $16,629,089.90.

(g) As to the seventh cause of action, compensatory damages in a sum of money that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction, and in an amount not less than $1,662,908.98, together with punitive damages in an amount sufficient to punish and deter the Defendants, in an amount not less than $16,629,089.90.

(h) As to the eighth cause of action, compensatory damages in a sum of money that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction, and in an amount not less than $1,662,908.98, together with punitive damages in an amount sufficient to punish and deter the Defendants, in an amount not less than $16,629,089.90.

(i) As to the ninth cause of action, compensatory damages in a sum of money that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction, and in an amount not less than $1,662,908.98, together with punitive damages in an amount sufficient to punish and deter the Defendants, in an amount not less than $16,629,089.90.

(j) As to the tenth cause of action, compensatory damages in a sum of money that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction, and in an amount not less than $1,662,908.98, together with punitive damages in an amount sufficient to punish and deter the Defendants, in an amount not less than $16,629,089.90.

(k) As to the eleventh cause of action, compensatory damages in a sum of money that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction, and in an amount not less than $1,662,908.98, together with punitive

damages in an amount sufficient to punish and deter the Defendants, in an amount not less than $16,629,089.90.

(l) As to the twelfth cause of action, compensatory damages in a sum of money that exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction, and in an amount not less than $1,662,908.98, together with punitive damages in an amount sufficient to punish and deter the Defendants, in an amount not less than $16,629,089.90.

(m) An award of reasonable attorneys' fees and costs;

(n) Further relief as this Court deems just and proper.

Dated: June 21st, 2022
      New York, NY


Respectfully submitted,


**CRISCIONE RAVALA LLP**                        **ROSS PITCOFF LAW**

/s/ Galen Criscione                             /s/ Ross E. Pitcoff
 Galen Criscione, Esq.                          Ross E. Pitcoff, Esq.
 *Attorneys for Plaintiffs*                     *Attorneys for Plaintiffs*
 250 Park Avenue, 7th Floor                     250 Park Avenue, 7th Floor
New York, NY 10177                              New York, NY 10177
gcriscione@lawcrt.com                           ross@rosspitcofflaw.com
(212) 920-7142                                  Tel: (646) 580-3204
                                                *Anticipated Pro Hoc Vice Counsel*